* * * * * * * * * * *
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS with some modifications the Decision and Order of the Deputy Commissioner.
 * * * * * * * * * * *
The following documents were proffered as evidence at the hearing before the Deputy Commissioner:
 EXHIBITS
1. Plaintiff's Exhibit 1: Medical consultation notes 4/10/00-3/20/01
2. Plaintiff's Exhibit 2: Grievance documents from 6/01
 3. Plaintiff's Exhibit 3: Note regarding CT lumbar spine 7/22/01 *Page 2 
4. Plaintiff's Exhibit 4: Note regarding MRI lumbar spine 10/17/01 and clinic notes from Dr. Robert E. Price, Jr. 9/7/01 and 11/2/01
5. Plaintiff's Exhibit 5: Defendant's responses to plaintiff's first set of interrogatories and requests for production and second set of interrogatories
6. Defendant's Exhibit 1: NCDOC/DOP Health Services Policy Procedure Manual, Utilization Review Plan
7. Defendant's Exhibit 2: Rules and regulations of Utilization Review Board
8. Defendant's Exhibit 3: Notes regarding the Utilization Review Board's review
 * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is an inmate in the custody of defendant. Plaintiff filed an affidavit alleging that as a result of the negligence of defendant's Utilization Review Board, he was denied necessary medical treatment for his low back condition for over a year. Defendant filed a timely Motion to Dismiss and Answer. By Order filed March 31, 2003, Commissioner Bernadine S. Ballance held defendant's Motion to Dismiss in abeyance and ordered the claim to be heard before a Deputy Commissioner.
2. Plaintiff has suffered from chronic low back pain since approximately 1988.
3. In February 2000, plaintiff was incarcerated at defendant's Caledonia facility. Around that time, plaintiff slipped and fell in the shower and experienced a flare-up in his low back pain with radiation into his right leg.
4. From the time of his incarceration until his slip and fall, plaintiff was relatively pain-free in his low back. Plaintiff worked as a janitor in prison. *Page 3 
5. After his fall, plaintiff put in a sick call and, on April 10, 2000, was seen by Mary Gardner, a physician's assistant at the Caledonia facility. Ms. Gardner noted that plaintiff had "chronic LBP [low back pain]." She placed plaintiff on Flexeril, a muscle relaxer, and recommended that plaintiff have a consultation with an orthopedist.
6. In early May 2000, defendant's Utilization Review Board (hereinafter "URB"), through Dr. Paula Smith, denied plaintiff a consultation with an orthopedist and instructed Ms. Gardner that she should follow plaintiff's low back pain locally at the Caledonia facility.
7. Plaintiff continued taking medications but was essentially unable to rest his back as Ms. Gardner recommended, because he was required to continue working.
8. Plaintiff appealed the URB's decision to deny him an orthopedic consultation.
9. In June 2000, on appeal to the URB, it was noted in the URB's notes that "[plaintiff was] still having back pain [and] getting no better[. He] needs to see [the] orthop[edist] at [Central Prison]. Medication is not helping[.] [M]ed[ical] records have been faxed 2 times to att[ention] Dr. Smith." The URB's notes also stated, "Inmate c/o chronic back pain inj[ured his] back a year ago [and is] still having problems[.] [F]lexeril 10mg 1 qid with no releif (sic)[.] records have been sent for a second time to attention Dr. Smith."
10. In early September 2000, the URB, again through Dr. Smith, denied plaintiff a consultation with an orthopedist.
11. Plaintiff continued making sick calls for his low back pain through late 2000.
12. In April 2001 after he had been transferred to defendant's Sampson facility, plaintiff was assigned to work on a road crew. Following a session of roadside work in late May 2001, plaintiff's low back pain flared significantly. Plaintiff filed a grievance pertaining to the *Page 4 
URB's ongoing refusal to authorize an orthopedic consultation. Following the grievance filing, the URB authorized a CT scan for plaintiff.
13. On July 22, 2001, plaintiff underwent a CT scan of his lumbar spine, which showed a marked disc bulge at L5. Based on this result, on September 7, 2001, plaintiff was sent to Dr. Robert E. Price, Jr., an orthopedist.
14. Dr. Price diagnosed plaintiff with possible lumbar radiculopathy and, "in view of the persistence of [plaintiff's] symptoms without any improvement," he recommended an MRI. Plaintiff underwent an MRI on October 17, 2001, which showed a herniated disc at L5-S1.
15. On November 2, 2001, plaintiff returned to Dr. Price. Based on his review of the MRI and because plaintiff's symptoms did not involve a significant component of leg pain, Dr. Price did not recommend surgery but, rather, an exercise program.
16. Plaintiff has not worked since May 2001. Since approximately November 2001, plaintiff has participated in physical therapy in accordance with Dr. Price's recommendation. Physical therapy has helped plaintiff's low back pain.
17. Defendant did not present testimony from Dr. Smith or other member of the URB.
18. The Commission finds that defendant, through the URB and Dr. Smith, on at least two occasions disregarded the recommendation of the on-site provider who examined plaintiff and recommended an orthopedic consultation for plaintiff. In issuing their September 2000 denial, defendant ignored that plaintiff's back pain was not getting any better, that the prescribed medication was not helping, and that the pain was chronic in nature.
19. Defendant has not alleged contributory negligence on the part of plaintiff.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission enters the following: *Page 5 
 CONCLUSIONS OF LAW
1. Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties. Bolkir v.N.C. State University, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988).
2. N.C. Gen. Stat. § 143-291, et seq. requires that plaintiff demonstrate negligence of an officer, employee, involuntary servant or agent of the State of North Carolina by the greater weight of the evidence.
3. Defendant, through the URB and Dr. Smith, owed plaintiff a duty of care to review his medical treatment carefully and authorize an orthopedic consultation if one was indicated based on plaintiff's symptoms and history. Defendant breached its duty of care when it failed to conduct an effective review and authorize an orthopedic consultation for plaintiff following his June 2000 appeal of the URB's earlier decision.
4. As a proximate result of the breach of the duty of care by defendant, plaintiff remained in significant pain for over a year without being allowed to see a specialist who could have addressed plaintiff's pain.
5. Having shown that he was damaged by the negligence of defendant, plaintiff is entitled to compensation under the Tort Claims Act in the amount of $500.00. N.C. Gen. Stat. § 143-291, et seq.
 * * * * * * * * * * *
Based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER 1. Defendant shall pay plaintiff the sum of $500.00 in money damages. *Page 6 
2. Defendant shall pay the costs of this action.
This 11th day of July, 2007.
S/___________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________________ BUCK LATTIMORE COMMISSIONER
 S/___________________________ DANNY LEE MCDONALD COMMISSIONER *Page 1